*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1317**

State of Minnesota,
Respondent,

vs.

James Earl Bailey,
Appellant.

**Filed November 17, 2025**
**Affirmed**
**Larson, Judge**

Hennepin County District Court
File No. 27-CR-24-2279

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Robert I. Yount, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Larson, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

On direct appeal, appellant James Earl Bailey challenges his false-imprisonment conviction. Bailey argues he is entitled to a new trial due to the district court's decision to exclude evidence that the alleged victim suffered from anxiety and post-traumatic-stress

disorder (PTSD). Because we conclude the district court's decision to exclude the evidence was not an abuse of discretion and did not deprive Bailey of his constitutional right to present a complete defense, we affirm.

**FACTS**

In January 2024, respondent State of Minnesota charged Bailey with one count of false imprisonment under Minn. Stat. § 609.255, subd. 2 (2024), and one count of domestic assault under Minn. Stat. § 609.2242, subd. 4 (2024). The complaint alleged that Bailey intentionally confined or restrained L.M. (ex-girlfriend) in a vehicle without her consent while she drove to various locations. The following facts were elicited at a jury trial.

Bailey and ex-girlfriend were in an intimate relationship lasting approximately three months that ended in December 2023. Toward the end of the relationship, Bailey exhibited concerning behaviors toward ex-girlfriend, including acting jealous and using gendered slurs. He also sent text messages threatening to "stab [her] in [the] neck," send her to the "sky, clouds," or "heaven," and "kill" anyone in his way. Ex-girlfriend felt "hurt" and "scared," and Bailey's behavior "made [ex-girlfriend's] anxiety go up."

A month after Bailey and ex-girlfriend ended their relationship, Bailey "popped all four" tires on ex-girlfriend's car. He also continued sending threatening text messages and told ex-girlfriend that she could not "dat[e] or see[] anyone but [him]." Thereafter, on January 27, 2024, ex-girlfriend told Bailey to remove his possessions from her storage unit. The two interacted at the storage unit several times that day in ways that made ex-girlfriend feel nervous. Then, in the evening, Bailey calmly approached ex-girlfriend while she was

2

in her car and asked if she would drive him to a fast-food restaurant.  Ex-girlfriend agreed, and Bailey sat down in the car.

Ex-girlfriend started driving toward the fast-food restaurant, and the situation escalated quickly.  Bailey started accusing ex-girlfriend of "trying to go see another guy."  Bailey "snatched" ex-girlfriend's phone from her hand and read through her text messages.  Then, Bailey turned off ex-girlfriend's phone and refused to return it.  Next, Bailey insisted that ex-girlfriend drive them to a secluded spot near a lake, despite ex-girlfriend's request to talk in a more crowded place.  Ex-girlfriend became "very nervous."

When they neared the lake, ex-girlfriend planned to jump out of the car near a police officer.  When ex-girlfriend removed her seatbelt, the noise alerted Bailey.  Bailey grew "angrier" and grabbed ex-girlfriend's arm and wrist, pulling her towards him.  After ex-girlfriend re-buckled her seatbelt, Bailey said, "Try something stupid.  I see that cop car up there."  While still holding her wrist as they drove past the police officer, Bailey grabbed his backpack and dared ex-girlfriend to "[t]ry something."  Ex-girlfriend did not know the backpack's contents but feared that it contained a gun or knife.  Ex-girlfriend felt that Bailey prevented her from leaving the car.  She had an "anxiety attack," "started crying," and felt "really scared."

As they continued looking for a place to park near the lake, Bailey kept complaining that the parking areas had "too many people" and were "not dark enough."  At that moment, ex-girlfriend felt that Bailey "was going to do something, hurt [her] or something else."

After further discussion, the pair drove to a pharmacy.  Upon arriving, Bailey told ex-girlfriend, "not to try anything stupid, not to try anything at all."  Bailey told ex-

3

girlfriend he planned to hold her hand inside the store. While they walked around inside, ex-girlfriend felt that she could not leave because Bailey still had her phone and stayed "real[ly] close" to her.

After leaving the pharmacy, they drove to another lake. Bailey calmed down and returned ex-girlfriend's phone. Ex-girlfriend sent a photo to her cousin to verify her whereabouts. Then the pair drove to a retail store. On their way, Bailey became "paranoid" that ex-girlfriend had called someone and that they were being followed.

When they arrived at the retail store, ex-girlfriend went to the bathroom to call her cousin. After leaving the bathroom, ex-girlfriend saw Bailey walking nervously and "looking in the aisles." Ex-girlfriend called Bailey's name. Then ex-girlfriend saw her brother, worried that brother and Bailey would fight, and started running toward the exit. Bailey began to run as well, yelling that someone had accused him of kidnapping ex-girlfriend. Ex-girlfriend stopped at the entrance; Bailey continued to run.

Moments later, ex-girlfriend's cousin arrived with law enforcement, who took ex-girlfriend to a security office inside the retail store. Law enforcement located Bailey at a nearby hotel, took him into custody, and brought him back to the retail store's parking lot. When ex-girlfriend learned that Bailey was on the premises, ex-girlfriend started shaking and hyperventilating. Ex-girlfriend then said, "He's going to kill me. I told you guys. He's going to get me because I got him locked up." Ex-girlfriend also told law enforcement that she "has anxiety and PTSD from a prior relationship."

Prior to trial, the state filed a motion to prohibit Bailey from eliciting testimony regarding ex-girlfriend's alleged anxiety or PTSD from a prior relationship. The district

4

court granted the state's motion, determining the evidence was "not relevant." *See* Minn. R. Evid. 401, 402. The district court explained that it did not "see how anxiety or PTSD affects a witness' ability to relay or recall events" and did not "think anxiety or PTSD ma[d]e it more or less likely that a witness might be truthful." The district court also excluded the evidence under Minn. R. Evid. 403, on the basis that "if there is any relevance . . . it is substantially outweighed by the potential for unfair prejudice."

After trial, the jury found Bailey guilty of false imprisonment and not guilty of domestic assault. The district court entered a conviction for the false-imprisonment count and sentenced Bailey to 36 months in prison.

Bailey appeals.

## DECISION

Bailey challenges the district court's evidentiary decision to exclude evidence that ex-girlfriend suffered from anxiety and PTSD from a prior relationship. According to Bailey, he is entitled to a new trial because the district court improperly excluded the evidence and deprived him of his constitutional right to present a complete defense.

"We review a district court's evidentiary rulings for abuse of discretion, even when, as here, the defendant claims that the exclusion of evidence deprived him of his constitutional right to a meaningful opportunity to present a complete defense." *State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Guzman*, 892 N.W.2d 801, 810 (Minn. 2017). Although a defendant enjoys a right to present evidence that is "material and favorable to their theory of the case,"

5

they have "no right to introduce evidence that either is irrelevant, or whose prejudicial effect outweighs its probative value." *State v. Crims*, 540 N.W.2d 860, 866 (Minn. App. 1995) (emphasis omitted), *rev. denied* (Minn. Jan. 23, 1996).

We first review the district court's decision to exclude the evidence under rule 403.[1] Under rule 403, a district court can exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As used in the rule, the word "prejudice" means an "unfair advantage that results from the capacity of the evidence to persuade by illegitimate means," and not "damage to the opponent's case that results from the legitimate probative force of the evidence." *State v. Mosley*, 853 N.W.2d 789, 797 (Minn. 2014) (quotation omitted). Consequently, if relevant evidence could persuade "the jury through illegitimate means, it must be excluded from trial." *State v. Hallmark*, 927 N.W.2d 281, 299 (Minn. 2019).

Here, the district court found that the evidence was only marginally relevant at best, and that any relevance was "substantially outweighed by the potential for unfair prejudice." We conclude the district court did not abuse its discretion. The record amply supports that the evidence may have caused unfair prejudice. Because ex-girlfriend's statement regarding anxiety and PTSD included allusions to an unrelated, prior abusive relationship,

---

[1] Bailey also challenges the district court's decision to exclude the evidence under rule 402. But we need not reach that issue because the evidence was properly excluded under rule 403.

6

the district court reasonably determined that introducing the evidence could have mislead the jury.

Bailey disagrees, relying on *State v. Hunt*, 615 N.W.2d 294 (Minn. 2000), to argue the district court improperly balanced the evidence because anxiety and PTSD could affect ex-girlfriend's "ability to accurately perceive and recall the events."[2] We are not persuaded.

In *Hunt*, the supreme court concluded that the state violated a defendant's constitutional right to due process when it failed to disclose medical evidence that a witness had been found incompetent to stand trial. 615 N.W.2d at 300-01. *Hunt* is distinguishable for two reasons. First, *Hunt* evaluates the disclosure of evidence, not its admissibility under the Minnesota Rules of Evidence. *Id.* at 299-301. Second, unlike *Hunt*, no medical evidence was ever produced that ex-girlfriend, in fact, suffers from anxiety and PTSD. *Id.* at 297-98, 301. And Bailey did not offer any evidence to explain how anxiety or PTSD could impact ex-girlfriend's ability to perceive and remember events.

For these reasons, we conclude the district court appropriately exercised its discretion under rule 403 when it excluded the evidence that ex-girlfriend suffered from anxiety and PTSD from a prior relationship.

---

[2] Bailey also relies on intoxication cases to support his argument that "a witness's mental condition that may affect their ability to accurately perceive and relate to events is relevant and admissible." It is well established that intoxication during an incident can impair a person's ability to perceive and remember events. *See, e.g.*, *State v. Hawkins*, 260 N.W.2d 150, 158 (Minn. 1977) (citing *Olstad v. Fahse*, 282 N.W. 694, 696 (Minn. 1938)). But Bailey does not provide any authority that the same is true for anxiety or PTSD.

Moreover, we conclude the district court did not deprive Bailey of the right to present a complete defense when it excluded this evidence. "The right of a defendant to present a complete defense . . . is guaranteed by the Due Process Clause of both the United States Constitution and the Minnesota Constitution." *State v. Foster*, 20 N.W.3d 6, 18 (Minn. 2025) (quotation and citations omitted). But application of rule 403 is "unquestionably constitutional." *State v. Pass*, 832 N.W.2d 836, 842 (Minn. 2013) (quotation omitted). Because the district court appropriately exercised its discretion under rule 403 when it excluded evidence that ex-girlfriend suffered from anxiety and PTSD from a prior relationship, we conclude the district court did not deprive Bailey of his right to present a complete defense.

**Affirmed.**